MATTER OF VARGAS-BANUELOS

In Deportation Proceedings

A-13532199

*Decided by Board December 6, 1971*

(1) Notwithstanding respondent did not accompany the illegal aliens into the United States, deportability is established under section 241(a)(13), Immigration and Nationality Act, for aiding and abetting aliens to enter illegally, where, in scheming with the aliens in Mexico, he instructed them where to cross the border undetected, told them where to go upon reaching the United States, and arranged for an accomplice to drive respondent's truck to El Paso, Texas to meet them.

(2) Respondent, a lawful permanent resident, who initially departed the United States with the intention of making an innocent, casual and brief visit in Mexico but who deviated from this intention and embarked upon a course of conduct contrary to a policy reflected in the immigration laws (aiding and abetting aliens to enter illegally), thereby transformed the innocent character of his trip. Hence, he does not come within the ambit of *Rosenberg v. Fleuti*, 374 U.S. 449 (1963), and upon his return made an entry upon which to predicate a ground of deportation. [*Yanez-Jacquez v. INS*, 440 F.2d 701 (C.A. 5, 1971), distinguished.]

CHARGE:

Order: Act of 1952—Section 241(a)(13) [8 U.S.C. 1251(a)(13)]—Alien who prior to entry, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law.

ON BEHALF OF RESPONDENT:
Karl Friedman, Esquire
American Bank of Commerce Bldg.
Suite 405
El Paso, Texas 79901
(Brief filed)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

William E. Weinert
Trial Attorney
(Brief filed)

The special inquiry officer found the respondent deportable as charged in his decision of November 2, 1970. The special inquiry officer denied the privilege of voluntary departure as a matter of

law. From the special inquiry officer's order the respondent appeals. His appeal will be dismissed.

The record relates to a 41-year-old married male alien, a native and citizen of Mexico, who was admitted to the United States as a lawful permanent resident in 1963. He is charged with having entered the United States on or about April 4, 1970. The respondent's testimony was that he went to Mexico on or about April 2, 1970 to offer condolences to the family of a deceased cousin. On or about April 3, 1970 he was approached by four aliens who wished to enter the United States illegally. The respondent accepted money from them and made certain arrangements for them. In connection with this the respondent was found guilty, upon his plea of guilty, in the United States District Court, Western District of Texas, El Paso Division, on four counts of violation of 8 U.S.C. 1325 and 18 U.S.C. 2. These violations clearly bring him within the purview of section 241(a)(13) of the Immigration and Nationality Act.

Section 241(a)(13) of the Immigration and Nationality Act makes deportable any alien who:

prior to, or at the time of entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted or aided any other alien to enter or to try to enter the United States in violation of law.

The Order to Show Cause indicates that the respondent was charged with a violation for conduct occurring *prior to* entry. The main issue raised by this appeal is whether an entry occurred on or about April 4, 1970.

Counsel claims that the special inquiry officer made three erroneous holdings: (1) that the respondent made an "entry" in April of 1970, (2) that the respondent aided and abetted the aliens in their actual entry into the United States, and (3) that the respondent received gain. We shall consider the last two points first.

The contention that there was error in holding that the respondnet aided and abetted aliens in their *actual* entry into the United States is without merit. Counsel evidently takes the position that section 241(a)(13) applies only to an alien who has physically brought another alien into the United States. The language of the statute is not that narrow. At oral argument counsel urged that no crime would have been committed had the aliens never entered. This argument is mistaken for two reasons: (1) it is not the fact of a criminal conviction that renders an alien deportable under section 241(a)(13), and (2) the statute covers ac-

811

tivity amounting to aiding and abetting another alien to *try* to enter, as well as to enter. In the present case the special inquiry officer found that the respondent, scheming with the aliens, instructed them in where to cross the border undetected, told them where to go once they reached the United States, and telephoned a woman accomplice in Denver, Colorado and had her drive to El Paso, Texas to meet the aliens in the respondent's pickup truck. We agree with the special inquiry officer who found that respondent's deportability under the charge was established by clear, convincing and unequivocal evidence. The special inquiry officer was also correct in accepting a certified copy of the record of conviction to support the Government's charge.

The contention that the respondent did not receive gain is likewise without basis. As the special inquiry officer pointed out, there was the admission of the respondent, along with other evidence to prove the element of gain. We agree with the special inquiry officer that the element of gain has been proved by clear, convincing and unequivocal evidence.

Counsel's chief contention is actually a claim that the present case comes within the ambit of the Supreme Court's decision in the case of *Rosenberg* v. *Fleuti*, 374 U.S. 449 (1963). That is, he would have us accept the proposition that no "entry" occurred in April of 1970 by virtue of the following statement of the Supreme Court in the *Fleuti* case:

[W]e declare today simply that an innocent, casual and brief excursion by a resident alien outside this country's borders may not have been "intended" as a departure disruptive of his resident status and therefore may not subject him to the consequences of an "entry" into the country on his return.

Counsel bases this contention upon the fact that the respondent testified that the respondent testified that his purpose for making his visit to Mexico was merely to offer condolences to the family of his deceased cousin. Counsel would have us look only to the respondent's intention at the time of departure, disregarding his involvement in alien smuggling which apparently developed only after he had reached Mexico.

The facts in the present case closely parallel those in *Matter of Valencia-Barajas*, Interim Decision No. 2001 (BIA, 1969), which involved a lawful permanent resident who went to Mexico for the purpose of visiting his parents, but who also knowingly and for gain aided, assisted and abetted aliens to enter the United States illegally. In that case we held that *Fleuti* did not apply, and that there had been an "entry." In commenting upon the alien's conviction for aiding and abetting the illegal entry of aliens into the

United States, we noted that, "This fact could support an inference that his purpose in departing from the United States was to accomplish an object which is contrary to a policy reflected in our immigration laws." We did not expressly base our decision upon an inference so drawn, but determined only that "In any event, we conclude that the respondent's departure can be regarded as 'meaningfully interruptive' of his permanent residence."

We said in another case, *Matter of Alvarez-Verduzco*, 11 I. & N. Dec. 625 (BIA, 1966), that the *Fleuti*, doctrine was inapplicable to a lawful permanent resident alien who, although he did not go to Mexico for the purpose of buying heroin, did nonetheless attempt to bring heroin into the United States in violation of law.

Counsel cites the case of *Yanez-Jacquez* v. *INS*, 440 F.2d 701 (5 Cir., 1971), as authority to support his contention that there was no entry in April 1970. The Fifth Circuit Court of Appeals in that case overruled our decision in *Matter of Yanez-Jacquez*, Interim Decision No. 2019 (BIA, 1970), wherein we held that a permanent resident alien who departed to Mexico for a short visit, the purpose of which was characterized by criminal intent, was not within the *Fleuti* rule, but made an "entry" in the eyes of the immigration laws. The Fifth Circuit Court, applying all the criteria outlined in *Fleuti*, disagreed and concluded that there was less than adequate evidence to support a finding that the alien had left the United States with an intent to interrupt his status as a permanent resident alien. The court itself indicated that "This case is necessarily limited to the facts," and "A different set of facts applied to the criteria to be weighed might dictate a different result."

The court in *Yanez-Jacquez* was referring to the factors enumerated in the *Fleuti* decision as having a bearing upon whether departure by a resident alien should be interpreted as a meaningful interruption of his resident status. One factor was the purpose of the visit. As Justice Goldberg said in the majority opinion, "... if the purpose of leaving the country is to accomplish some object which is itself contrary to some policy reflected in our immigration laws, it would appear that the interruption of residence thereby occurring would properly be regarded as meaningful."

The *Yanez-Jacquez* case is distinguishable from the present case. First of all, the alien in that case was not charged with deportability under section 241 (a) (13) for having assisted aliens to enter the United States illegally. Secondly, the alien had been issued a border crossing identity card and was in the habit of mak-

ing twice-weekly crossings into Mexico. The court noted that "Each time, however, he returned to the United States and appeared outwardly to regard this country as his permanent residence." The only criminality attached to any of his brief visits to Mexico occurred in connection with the following incident. On one of his trips to Mexico he was assaulted and robbed. The next day, armed with an icepick, he returned to Mexico in a fruitless search for his assailants. The respondent, like the alien in *Valcencia-Barajas, spura,* stands in a different light for he has actually been convicted of a crime involving an object clearly contrary to policies reflected in our immigration laws, namely, the crime of assisting the illegal entry of aliens into the United States. The respondent has been charged with deportability under section 241(a)(13). The alien in *Yanez-Jacquez* was charged with deportability under an entirely unrelated statutory section. Therefore, we do not apply the Fifth Circuit's holding in *Yanez-Jacquez* to the facts of the present case.

In another case, *Caudillo-Villalobos v. INS,* 361 F.2d 329 (5 Cir., 1966), the same court sustained a determination of this Board that a lawful permanent resident alien had made an "entry" within the contemplation of the *Fleuti* doctrine when he returned to this country after a conviction abroad of the crime of incest. The court affirmed our decision in *Matter of Caudillo-Villalobos,* 11 I. & N. Dec. 15 (BIA, 1965), wherein we said, "the type and length of this absence is not the innocent, casual, and brief absence that was present in the *Fleuti* case."

Consequently, we agree with the special inquiry officer that the *Fleuti* rule is not applicable to the factual situation found in the present case. We go slightly beyond our holding in *Valencia-Barajas, supra,* and hold that although the respondent may have initially departed the United States with the intention of making an innocent, casual and brief excursion abroad, he deviated from his intention and embarked upon a course of conduct contrary to a policy reflected in the immigration laws; and by doing so, he thereby transformed the previously innocent character of his trip into something other than innocent, at least so far as the immigration laws are concerned. In such a case, the respondent's departure no longer is considered by us as not intended to be disruptive of his resident status. As a result, he now may be subjected to the consequences of an "entry" upon his return. We accordingly accept the finding of the special inquiry officer that he had made an entry and is subject to deportation because of his

violation of section 241 (a) (13) of the Act. We have no alternative but to affirm the decision of the special inquiry officer.

The special inquiry officer denied the respondent the privilege of voluntary departure because he could not establish that he was a person of good moral character for the five-year period as required under section 244 (e) of the Act. The special inquiry officer concluded that the conviction barred, as a matter of law, a finding of good moral character by virtue of section 101 (f) (3). We agree with that conclusion.

Hence, the respondent's appeal is without merit and must be dismissed. The following order will accordingly be entered.

**ORDER:** The appeal is dismissed.