**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMMA ALTAMIRANO,
                            *Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,
                            *Respondent.*

No. 03-70737

Agency No.
A77-411-293

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued December 9, 2004
Submitted October 31, 2005
Pasadena, California

Filed October 31, 2005

Before: Betty B. Fletcher, Pamela Ann Rymer, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez;
Partial Concurrence and Partial Dissent by Judge Rymer

---

   *Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

14843

## COUNSEL

Kevin Bove, Esq., Escondido, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Civil Division, Ernesto H. Molina, Jr., Senior Litigation Counsel, M. Jocelyn Lopez Wright, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, Washington, DC, for the respondent.

## OPINION

PAEZ, Circuit Judge:

Emma Altamirano ("Altamirano") petitions for review of the Board of Immigration Appeals' ("BIA") order affirming, in a streamlined decision, the Immigration Judge's ("IJ") decision denying Altamirano's motion to terminate removal proceedings against her and finding that Altamirano is inadmissable because she engaged in alien smuggling in violation of § 212(a)(6)(E)(i) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(a)(6)(E)(i) (Supp. V 1999).[1] The INS sought to remove Altamirano when she attempted to enter the United States in a vehicle in which an illegal alien was hiding in the trunk. Altamirano does not dispute that she knew the alien was in the trunk when the vehicle attempted to pass through the port of entry. Altamirano contends, however, that because she did not affirmatively assist the alien in attempting to enter the United States, she did not engage in alien smuggling. In addition, Altamirano argues that the BIA impermissibly streamlined her appeal. The government argues, however, that § 212(a)(6)(E)(i)'s prohibition against alien smuggling encompasses Altamirano's conduct, and therefore that the IJ properly determined that she is inadmissible. The government further argues that the IJ erred in assuming that the government bears the burden of proof rather than placing the burden on Altamirano to prove that she was admissible. *See id.* § 240(c)(2), 8 U.S.C. § 1229a(c)(2).

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review a final order of removal. We hold that Altamirano's mere presence in the vehicle at the port of entry does not constitute alien smuggling under § 212(a)(6)(E)(i) despite her knowl-

---

[1]INA § 212(a)(6)(E)(i) provides that: "Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." 8 U.S.C. § 1182(a)(6)(E)(i) (Supp. V 1999).

edge that an alien was hiding in the trunk of the vehicle. The IJ's determination of inadmissibility was clearly contrary to the plain meaning of the statutory provision. We therefore grant the petition for review.[2]

## I. Background

Emma Altamirano, a citizen of Mexico, is married to Miguel Altamirano, a United States citizen. At the time of the events at issue here, Altamirano resided in the United States pursuant to a grant of parole by the Attorney General pending final resolution of the immediate relative visa petition filed by her husband. Altamirano's parole status allowed her to depart and reenter the United States.

Altamirano and her family frequently made trips back and forth to Mexico. On May 20, 2000, Altamirano, her husband, and their two daughters traveled from Ramona, California to Tijuana, Mexico to purchase pinatas. Early the next day, when Altamirano attempted to reenter the United States, she was detained by immigration officers at the port of entry in San Ysidro, California. Altamirano was returning to the United States in the family car along with her husband, who was driving, and her father-in-law, a permanent United States resident. A fourth individual, Juan Manuel Martinez-Marin, a Mexican citizen, was hiding in the trunk. Altamirano, her husband, and her father-in law were all aware that Martinez-Marin was in the trunk when they attempted to enter the United States. At the primary inspection station, the officers inspected the vehicle and discovered Martinez-Marin in the trunk. Altamirano was subsequently denied admission to the United States because she allegedly engaged in alien smuggling in violation of INA § 212(a)(6)(E)(i).

---

[2]Because the IJ did not make an adverse credibility determination, we accept Altamirano's testimony as credible. *See Shoafera v. INS*, 228 F.3d 1070, 1074 n.3 (9th Cir. 2000).

At the July 30, 2001 removal hearing, Altamirano and her husband testified that they decided to return to California on May 21 because they had forgotten several items at home. Altamirano's husband explained that he needed to retrieve their daughters' birth certificates in order for their daughters to reenter the United States and that Altamirano needed to accompany him because she knew where the documents were located. He further testified that Altamirano accompanied him because they are "always together."

When questioned by immigration officers following the primary inspection of the vehicle, Altamirano informed the officers that she knew that her father-in-law had made plans with a friend to transport Martinez-Marin into the United States. She admitted that her husband had told her of the plan the night before.[3] She also knew that Martinez-Marin was in the trunk when she got into the vehicle. Altamirano testified, however, that she did not see Martinez-Marin before they were detained; she did not know his name prior to their detention and she did not know his final destination.

When the officers discovered Martinez-Marin in the trunk during the primary inspection of the vehicle, they detained Altamirano. Although Altamirano was not charged with a criminal offense, the Immigration and Naturalization Service ("INS") initiated removal proceedings against her. The INS served her with a Notice to Appear, alleging that she was an "arriving alien" who "knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law" and was subject to removal from the United States pursuant to INA § 212(a)(6)(E)(i).

---

[3]Emma and Miguel Altamirano provided inconsistent testimony regarding when each had knowledge of the smuggling effort. The IJ concluded, however, that "the record appears undisputed that respondent knew of the smuggling plan several hours prior to the vehicle's arrival at the port of entry."

Following a hearing on July 30, 2001, the IJ issued an oral decision. The IJ noted that Altamirano testified that "she was not involved in the planning of the smuggling attempt" and "was not involved in the placing of Martinez-Marin into the trunk of the car." In addition, the IJ found that Altamirano did not know whether her father-in-law would be paid for his assistance and that "her involvement in the smuggling attempt was limited to her knowledge that Martinez-Marin was in the trunk of the vehicle and her presence in the vehicle during the primary and secondary inspections." On the basis of these findings, the IJ determined that with the "knowledge [that Martinez-Marin was in the trunk], respondent was present in the vehicle and was equally as culpable at that point, with her husband, and her father-in-law, in the effort to assist and aid Mr. Martinez-Marin's unlawful entry into the United States from Mexico." The IJ therefore concluded that Altamirano was inadmissible pursuant to INA § 212(a)(6)(E)(i). Altamirano appealed to the BIA, which, in a streamlined decision, affirmed the results of the IJ's decision. *See* 8 C.F.R. § 3.1(e)(4) (2003).

In Altamirano's petition for review, she argues that although she was present in the vehicle and knew that Martinez-Marin was in the trunk, she did not "encourage[ ], induce[ ], assist[ ], abet[ ] or aid[ ]" another alien to enter the United States in violation of § 212(a)(6)(E)(i). Additionally, she challenges the BIA's decision to streamline her appeal on the ground that the issue before the IJ—whether her presence in the vehicle with her knowledge that Martinez-Marin was in the trunk constituted alien smuggling in violation of § 212(a)(6)(E)(i)—was not controlled by precedent. *See id.* § 3.1(e)(4)(A).

## II. Burden of Proof

In the IJ's decision finding Altamirano inadmissible, the IJ concluded that "the government has provided clear, cogent and convincing evidence that respondent has violated Section

212(a)(6)(E)(i)" of the INA, citing *Woodby v. INS*, 385 U.S. 276 (1966). The government argues that the IJ erred in concluding that the government bears the burden of proof because under INA § 240(c)(2) Altamirano bears the burden of establishing that she is admissible.

**[1]** In removal proceedings, an alien who is "an applicant for admission" bears the burden of establishing that she "is clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182 of this title; or . . . by clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission." INA § 240(c)(2), 8 U.S.C. § 1229a(c)(2) (Supp. V 1999); *see also* 8 C.F.R. § 240.8(b) (2000) ("Arriving Aliens. In proceedings commenced upon a respondent's arrival in the United States or after the revocation or expiration of parole, the respondent must prove that he or she is clearly and beyond a doubt entitled to be admitted to the United States and is not inadmissible as charged."). On the other hand, when an alien has been admitted to the United States, "the Service has the burden of establishing by clear and convincing evidence that . . . the alien is deportable." INA § 240(c)(3)(A), 8 U.S.C. § 1229a(c)(3)(A) (Supp. V 1999).

The government argues that Altamirano is a parolee and is therefore an "applicant for admission" who bears the burden of proof. We agree. Under INA § 212(d)(5), the Attorney General has the discretion to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." *Id*. § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). Parole status, however, "shall not be regarded as an admission of the alien," *id*., and is not a "lawful entry of the alien into the United States." *Id*. § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A).[4]

---

[4]INA §101(a)(13) provides, in relevant part:

   (A) The terms "admission" and "admitted" mean, with respect to

**[2]** Accordingly, the IJ erred when he placed the burden of proof on the government. As a parolee under INA § 212(d)(5), Altamirano was an applicant for admission when she attempted to enter the United States on May 21, 2000. She therefore bore the burden of establishing that she was "clearly and beyond doubt entitled to be admitted and is not inadmissible under section 1182." *Id.* § 240(c)(2)(A), 8 U.S.C. § 1229a(c)(2)(A). Nonetheless, the improper allocation of the burden of proof does not affect our ultimate disposition of this case. Here, determining whether Altamirano was inadmissible under INA § 212(a)(6)(E)(i) is a matter of statutory construction. Because we conclude that the plain text of the alien smuggling provision does not encompass Altamirano's conduct, the allocation of the burden of proof is not dispositive of the ultimate question of Altamirano's admissibility.

### III. INA § 212(a)(6)(E)(i)

Altamirano challenges the IJ's determination that she violated § 212(a)(6)(E)(i) because she was present in the vehicle

---

an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.

(B)  An alien who is paroled under section 1182(d)(5) of this title . . . shall not be considered to have been admitted.

8 U.S.C. § 1101(a)(13) (Supp. V 1999). Further, 8 C.F.R. § 1.1(q) (2000) provides:

The term *arriving alien* means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport. An arriving alien remains such even if paroled pursuant to section 212(d)(5) of the Act, except that an alien who was paroled before April 1, 1997, or an alien who was granted advance parole which the alien applied for and obtained in the United States prior to the alien's departure from and return to the United States, shall not be considered an arriving alien for purposes of section 235(b)(1)(A)(i) of the Act.

and knew that Martinez-Marin was in the trunk at the port of entry. When, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision as the final agency action. *Kebede v. Ashcroft*, 366 F.3d 808, 809 (9th Cir. 2004) (citing *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 849 (9th Cir. 2003)). "We review purely legal questions concerning the meaning of the immigration laws *de novo*." *Lagandaon v. Ashcroft*, 383 F.3d 983, 987 (9th Cir. 2004) (citing *Murillo-Espinoza v. INS*, 261 F.3d 771, 773 (9th Cir. 2001)). As Altamirano "offers no objections to the IJ's findings of fact, this case presents a legal question that we review de novo." *Perez-Enriquez v. Gonzales*, 411 F.3d 1079, 1081 (9th Cir. 2005) (citing *Shivaraman v. Ashcroft*, 360 F.3d 1142, 1145 (9th Cir. 2004) and *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir. 1995)).

The IJ determined that Altamirano's presence in the vehicle with knowledge that Martinez-Marin was hiding in the trunk constituted a violation of § 212(a)(6)(E)(i). The IJ emphasized that this conclusion was not based on "any theory involving a conspiracy entered into by respondent, her husband, and her father-in-law." Rather, the IJ found that when Altamirano arrived at the port of entry, she, like her husband and father-in-law, knew that "there was an undocumented and unauthorized Mexican national in the trunk of the car." As noted, the IJ concluded that "[w]ith that knowledge, respondent was present in the vehicle and was equally as culpable at that point, with her husband, and her father-in-law, in the effort to assist and aid Mr. Martinez-Marin's unlawful entry into the United States from Mexico." In sum, the IJ reasoned,

> Although it is true that respondent does not appear to have been involved in the planning stages of the smuggling attempt, or that she assisted in the physical acts of placing Mr. Martinez-Marin into the trunk of the vehicle, she nonetheless made herself equally as culpable as her father-in-law and husband, when she agreed, having knowledge of Mr. Martinez-

> Marin's presence in the trunk of the vehicle, to accompanying her family members to the United States.

The IJ's reasoning, however, is contrary to the alien smuggling provision.

**[3]** "The starting point for our interpretation of a statute is always its language." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989). "[W]e begin by looking to the plain meaning of the term[s] at issue." *Padash v. INS*, 358 F.3d 1161, 1169 (9th Cir. 2004). Section 212(a)(6)(E)(i) provides that, "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." 8 U.S.C. § 1182(a)(6)(E)(i) (Supp. V 1999).[5] The plain meaning of this statutory provision requires an affirmative act of help, assistance, or encouragement. Here, because Altamirano did not affirmatively act to assist Martinez-Marin, she did not engage in alien smuggling. That she was present in the vehicle and knew that Martinez-Marin was in the trunk does not amount to a violation of § 212(a)(6)(E)(i). Thus, the IJ's conclusion that Altamirano's mere presence and knowledge constituted alien smuggling is "clearly contrary to the plain and sensible meaning of the statute." *Kankamalage v. INS*, 335 F.3d 858, 862 (9th Cir. 2003).

---

[5]Similarly, INA § 237(a)(1)(E)(i), which relates to admitted aliens, provides: "Any alien who (prior to the date of entry, at the time of any entry, or within 5 years of the date of any entry) knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is deportable." 8 U.S.C. § 1227(a)(1)(E)(i) (Supp. V 1999). Prior to 1990, the exclusion and deportation smuggling provisions applied to those who knowingly assisted the illegal entry of an alien "for gain." *See id.* § 212(a)(31), 8 U.S.C. § 1182(a)(31) (1988); *id.* § 241(a)(13), 8 U.S.C. § 1251(a)(13). The "for gain" requirement was removed with the enactment of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978.

**[4]** Indeed, when courts or the BIA have determined that an alien is removable under the INA for having engaged in alien smuggling, the alien has provided some form of affirmative assistance to the illegally entering alien. *See, e.g.*, *Moran v. Ashcroft*, 395 F.3d 1089, 1091-92 (9th Cir. 2005) (stating that alien paid smugglers to bring his wife and child to the United States); *Sidhu v. Ashcroft*, 368 F.3d 1160, 1162 (9th Cir. 2004) (explaining that alien agreed in advance to help her nephew illegally enter, guided him through immigration at the airport, and presented his fraudulent documents at the airport); *Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir. 2000) (stating that alien paid smugglers to bring his wife and child to the United States); *see also Olowo v. Ashcroft*, 368 F.3d 692, 697 (7th Cir. 2004) (emphasizing that alien delivered plane tickets to three Nigerian citizens and hid their Nigerian passports from the INS inspectors, and also provided false information and false documents to the INS to assist the Nigerian child to enter illegally); *Sanchez-Marquez v. INS*, 725 F.2d 61, 63 (7th Cir. 1984) (explaining that alien pre-arranged to drive and drove seven aliens from the Texas-Mexico border to San Antonio); *Matter of Arthur*, 16 I. & N. Dec. 558, 558 (B.I.A. 1978) (describing how petitioner illegally transported aliens into the United States from Panama); *Matter of Vargas-Banuelos*, 13 I. & N. Dec. 810, 812 (B.I.A. 1971) (stating that alien pre-arranged in Mexico to assist aliens to enter the United States, instructed them where to cross the border undetected, told them where to go in the United States, and arranged for a driver to pick them up once they entered); *Matter of Corral-Fragoso*, 11 I. & N. Dec. 478, 478-79 (B.I.A. 1966) (explaining that alien pre-arranged in Mexico to transport aliens from El Paso, Texas to Chicago, Illinois and drove them in accordance with the arrangements).[6]

---

[6]We also note the U.S. Department of State Foreign Affairs Manual's interpretation of § 212(a)(6)(E)(i):

The actions for which a "smuggler" might be found ineligible are numerous. They could be as little as offering an alien a job under circumstances where it is clear that the alien will not enter the

Moreover, the Sixth Circuit recently has held that an alien is *not* inadmissible under § 212(a)(6)(E)(i) if the alien did *not* perform an affirmative act of assistance. *See Tapucu v. Gonzales*, 399 F.3d 736, 740-42 (6th Cir. 2005). In *Tapucu*, Morhay Tapucu and three friends shared driving responsibilities during a return trip from Toronto, Canada back to Chicago where they resided. *Id.* at 737. When stopped at the port of entry, Tapucu was driving. One member of the group, Kirkor Deveci, was a Canadian citizen who had been living illegally in Chicago. *Id.* Tapucu testified that he knew that Deveci had been living illegally in the United States, but he believed that Deveci's family had applied for permanent residence status for him. *Id.* The IJ concluded that Tapucu engaged in alien smuggling because "he was driving the van at the time it reached the border, because Tapucu knew that Deveci was living illegally in the United States and because Tapucu failed to correct Deveci's misstatement to the officers that he had a residence in Toronto, Canada." *Id.* at 738.

[5] On appeal, however, the Sixth Circuit vacated the IJ's decision, holding that the facts showed that "Tapucu did not commit a single affirmative act designed to assist an illegal effort by Deveci to cross the border and that indeed Tapucu thought Deveci legally could re-enter the country." *Id.* at 739. The court held that the alien smuggling provision "requires an affirmative and illicit act of assistance in shepherding someone across the border." *Id.* at 740. The court further emphasized that there was no authority for holding that "one may be tagged as a smuggler of aliens without committing a single

---

United States legally in order to accept the employment (encourage and induce), or they might actually involve physically bringing an alien into the United States illegally (aid and assist).

9 U.S. DEP'T OF STATE, FOREIGN AFF. MANUAL § 40.86 n.5 (1995). Nonetheless, some "action" must occur to render an alien inadmissible or excludable on the basis of alien smuggling. No such action took place here.

affirmative illicit act." *Id*. at 741. We agree with the Sixth Circuit's interpretation of § 212(a)(6)(E)(i).

**[6]** Our conclusion is buttressed by the well-established meaning of aiding and abetting. We consider the traditional criminal law aiding and abetting doctrine here because § 212(a)(6)(E)(i) imports this concept from criminal law and because the alien smuggling provisions of the INA have been generally analyzed as aiding and abetting statutes. *See, e.g.*, *Matter of I— M—*, 7 I. & N. Dec. 389, 391 (B.I.A. 1957) ("We agree with counsel that the provisions of section 274 cannot be 'added to' section 241(a)(13) to make the crime of 'transporting' a deportable offense, where there was no 'aiding and abetting the entry.' We find that respondent did not aid or abet the entry of the assisted aliens."); *see also Cuevas-Cuevas v. INS*, 523 F.2d 883, 884 (9th Cir. 1975) (per curiam) ("Petitioner's plea of guilty[, admitting that he violated 8 U.S.C. § 1325 and 18 U.S.C. § 2,] established that he knowingly abetted and aided other aliens to enter the United States in violation of law within the meaning of 8 U.S.C. § 1251(a)(13)."); *Matter of Contreras*, 18 I. & N. Dec. 30, 32 (B.I.A. 1981) ("The applicant's plea of guilty to the Title 18 U.S.C. 1325 offense[, conspiracy to aid and abet the illegal entry of aliens,] establishes the first element required to show that he knowingly aided and abetted another alien to enter the United States in violation of law.").[7]

---

[7]In several other circumstances, courts have looked to criminal law or other areas of civil law to interpret immigration statutes. For example, in *Jordan v. De George*, 341 U.S. 223 (1951), the Supreme Court held that in deciding whether a crime is one involving "moral turpitude" under the Immigration Act of 1917, the Court must "look to the manner in which the term 'moral turpitude' has been applied by judicial decision." *Id.* at 227. Noting cases outside the immigration context, the Court stated "[w]ithout exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude." *Id.* We also look to criminal law principles to determine whether a criminal conviction constitutes an aggravated felony or a crime of violence for immigration purposes. *See, e.g.*, *Penuliar v. Ashcroft*, 395 F.3d 1037, 1041-46 (9th Cir. 2005) (applying the analytical framework of *Taylor v. United States*, 495 U.S. 575 (1990), which governs the categorization of crimes for the purpose of sentencing enhancements, to determine whether a crime is an "aggravated felony" or a "crime of violence" under the INA removal provisions).

**[7]** It is well-established that "[i]n order to aid and abet another to commit a crime it is necessary that a defendant 'in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek *by his action* to make it succeed.' " *Nye & Nissen v. United States*, 336 U.S. 613, 619 (1949) (quoting *United States v. Peoni*, 100 F.2d 401, 402 (2nd Cir. 1938) (Hand, J.) (emphasis added)). A defendant cannot be convicted of aiding and abetting absent an affirmative act of assistance in the commission of the crime. *See United States v. Atkinson*, 966 F.2d 1270, 1274 (9th Cir. 1992) (holding that the district court's jury instructions on aiding and abetting were proper because they "clearly informed the jury they could convict Atkinson only if they found he took some affirmative step to assist in the commission of a crime"). This common understanding of aiding and abetting is reflected in Ninth Circuit Model Criminal Jury Instruction 5.1. The model instruction admonishes jurors that: "It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime." Ninth Cir. Model Crim. Jury Inst. 5.1 (2005).[8]

---

[8]Ninth Circuit Model Criminal Jury Instruction 5.1 provides, in full:

A defendant may be found guilty of [crime charged], even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission. To prove a defendant guilty of aiding and abetting, the government must prove beyond a reasonable doubt:

First, [crime charged] was committed by someone;

Second, the defendant knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit each element of [crime charged]; and

Third, the defendant acted before the crime was completed.

It is not enough that the defendant merely associated with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime.

**[8]** Further, we consistently have held that "mere presence at the scene of the crime and knowledge that the crime is being committed is not enough" to sustain a conviction for aiding and abetting. *United States v. Bancalari*, 110 F.3d 1425, 1430 (9th Cir. 1997); *see also United States v. Negrete-Gonzales*, 966 F.2d 1277, 1282 (9th Cir. 1992); *United States v. Rubio-Villareal*, 927 F.2d 1495, 1500-02 (9th Cir. 1991); *United States v. Burgess*, 791 F.2d 676, 680 (9th Cir. 1986); *Diaz-Rosendo v. United States*, 364 F.2d 941, 944 (9th Cir. 1966). The prosecution must prove that "the defendant was a participant, and not merely a knowing spectator." *United States v. Gaskins*, 849 F.2d 454, 460 (9th Cir. 1988). In *United States v. Sanchez-Mata*, 925 F.2d 1166 (9th Cir. 1991), for instance, we considered whether there was sufficient evidence to support a conviction of aiding and abetting possession with intent to distribute narcotics. Despite evidence that Sanchez-Mata was a passenger in a vehicle carrying 141 pounds of marijuana, and that he likely knew the marijuana was in the vehicle because of its strong odor, we concluded that "the evidence against Sanchez-Mata for aiding and abetting is *nonexistent*. Sanchez-Mata's presence as a passenger in the car cannot support an aiding and abetting theory." *Id*. at 1169 (emphasis added).

**[9]** Similarly, here, Altamirano's mere presence in the vehicle with knowledge that Martinez-Marin was in the trunk does not amount to aiding and abetting or assisting the illegal entry of an alien. Section 212(a)(6)(E)(i) requires an act of assistance or encouragement. There is no evidence of any such affirmative act here. The government argues that Altami-

---

The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit [crime charged].

The government is not required to prove precisely which defendant actually committed the crime and which defendant aided and abetted.

rano's presence in the car provided an air of normalcy and legitimacy that assisted in ensuring Martinez-Marin's illegal entry. This, however, was not the basis for the IJ's decision. We "may not accept appellate counsel's post hoc rationalizations for agency action; *Chenery* requires that an agency's discretionary order be upheld, if at all, on the same basis articulated in the order by the agency itself . . . ." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168-69 (1962) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

Further, the record does not support this theory. There is no evidence that Altamirano's presence, or a passenger's presence in general, would make the immigration officers at the border less suspicious. Nor is there evidence that the immigration officers knew that Altamirano and her husband regularly made trips from the United States to Mexico. It is just as likely that Altamirano's husband and father-in-law routinely made such trips without Altamirano. We therefore cannot accept the government's litigation theory, which neither formed the basis for the IJ's determination nor finds support in the record.

**[10]** Thus, we conclude that Altamirano's mere presence in the vehicle with knowledge of the plan did not constitute alien smuggling under § 212(a)(6)(E)(i). The IJ's determination to the contrary clearly contradicted the statutory requirement that a violation involve an affirmative act of assistance or encouragement. We therefore grant the petition for review.[9]

## IV. Conclusion

We conclude that Altamirano was an applicant for admission and bears the burden of proof. *See* 8 U.S.C. § 1129a(c)(2) (Supp. V 1999). Nonetheless, we hold that INA § 212(a)(6)(E)(i) requires an affirmative act of assistance or

---

[9]In light of our disposition, we need not address Altamirano's argument that the BIA erred in streamlining her appeal.

encouragement and that the IJ's conclusion that Altamirano violated § 212(a)(6)(E)(i) without such an act is clearly contrary to the plain language of the INA. We therefore grant the petition for review and remand to the IJ with instructions to grant Altamirano's motion to terminate removal proceedings against her.

PETITION GRANTED.

---

RYMER, Circuit Judge, concurring in part and dissenting in part:

I agree that the immigration judge improperly placed the burden of proof regarding inadmissibility on the government rather than on Altamirano. And while I generally agree with the majority's construction of § 212(a)(6)(E)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1182(a)(6)(E)(i), and the well-established aiding and abetting principles which it embodies, I part company over the application of those principles and the statute to the facts of this case.

I do not think the IJ was compelled to find that Altamirano did not affirmatively assist or encourage her husband and father-in-law. The question is not whether Altamirano's knowledge of illegal activity and mere presence in the car suffice to bring her within the terms of the statute, but whether her deliberate presence in the car when it crossed the border, knowing that her husband and father-in-law were smuggling an illegal alien in the trunk of the car, supports a finding that she joined them in the car and stayed in the car for the purpose of facilitating the smuggling. It does, because Altamirano's getting into the car and not getting out at the border were affirmative acts that assisted the alien smuggling plan by making it less likely that the car would be stopped. Altamirano knew about her husband's and father-in-law's plan to smuggle Martinez-Marin into the country in the trunk of the

car when she agreed to travel with them from Tijuana back to Ramona at 4:30 a.m. She admitted that no one forced her to go with them. Altamirano also knew that she could have left the car and walked across the border, rather than remain as a passenger, when the car reached the primary inspection station. And, contrary to the account her husband gave about the reason they were returning to the United States and why Altamirano had to come along, she could not give a coherent explanation of the reason for their trip. Together, these facts support a reasonable inference that Altamirano was fully on board the program, thereby affirmatively helping to bring the illegal alien across the border.

I would, therefore, deny the petition.