CALLAHAN, Circuit Judge,
dissenting:
After Santiago entered formal admissions to the allegations in the Notice to Appear and conceded removability, the Government agreed not to oppose his Motion to Change Venue. Now — several years and a couple of different attorneys later — Santiago seeks to withdraw his formal admissions. However, he has not shown either that the admissions he made were false, or that there are egregious circumstances compelling the withdrawal of those admissions. Accordingly, I respectfully dissent.
As the majority recognizes, the general legal framework for this case was set forth in Matter of Velasquez, 19 I. & N. Dec. 377 (BIA 1986), as follows:
Absent egregious circumstances, a distinct and formal admission made before, during, or even after a proceeding by an attorney acting in his professional capacity binds his client as a judicial admission. Thus, when an admission is made as a tactical decision by an attorney in a deportation proceeding, the admission is binding on his alien client and may be relied upon as evidence of deportability.
Velasquez, 19 I. & N. Dec. at 382 (internal citations omitted).
Santiago cannot obtain relief here because he cannot show egregious circumstances compelling the withdrawal of his prior admissions. At the end of the day, several key facts remain undisputed. When Santiago was in Mexico marrying his wife, Santiago’s brother lived in Santiago’s house in Mexico. After the wedding, Santiago, his wife, and his brother traveled around Mexico, and they all took a plane together to Juarez, Mexico, right next to the United States border. Santiago bought the airline ticket for his wife, and *837 his brother bought one for himself. • While Santiago, his wife, and brother were all together in Juarez, Santiago bought a green card for his wife and his brother bought one for himself. Santiago used a coyote to cross the border into El Paso, Texas, and then separately, his wife and brother traveled across the border using one or more coyotes. The three of them met up together in El Paso and went to a travel agency, where Santiago’s brother and wife bought tickets to Los Angeles. They all then traveled together to the El Paso airport, where they were apprehended. At that time, Santiago was carrying false documents in his bag for both his brother and his wife. These undisputed facts add up to a series of group-oriented, carefully coordinated, smuggling-related events. Taken together, they show that Santiago aided his brother in illegally entering the United States.
After discussing “everything” with Santiago (which presumably included all the facts set forth above), Attorney Dominguez entered formal admissions on Santiago’s behalf. These admissions prompted the government to agree not to oppose Santiago’s Motion to Change Venue from El Paso, Texas to Los Angeles, California, where Santiago resided, and thus “the decision to admit the allegations and concede removability made the motion to change venue more likely to be granted.” Majority at 831. As the IJ stated, and the majority does not dispute, Santiago “received a benefit in return for his change of venue to the detriment of the Government by giving up the locale where there[sic] witnesses were located.” See Majority at 831. Having received a strategic benefit from his admissions, and being unable to show that the admissions were in fact false, Santiago is now unable to show “egregious circumstances” sufficient to compel the withdrawal of his admissions.
Here, the majority seeks to avoid this conclusion by focusing on the theoretical possibility that Santiago’s testimony might be construed to suggest that the admissions he entered were not, in fact, true. The majority states that Santiago may not be guilty of smuggling because he has protested that he is “innocent” of the charges and that he did not “help” his brother, only his wife. However, these are legal conclusions, not factual ones. The facts that Santiago now admits reasonably support a finding that he aided and abetted his brother’s entrance into this country, consistent with the admissions made by his attorney. Even if a trier of fact were not compelled to conclude that Santiago had failed to show egregious circumstances, a trier of fact certainly could reasonably so conclude.[1]
The majority faults the BIA for not acknowledging the legal significance of Altamirano v. Gonzales, 427 F.3d 586 (9th Cir.2005). Majority at 833-34. The majority misses the point. The BIA cannot be faulted for failing to explicitly acknowledge Altamirano, because Altamirano does not change the outcome of this case. Altamirano held that riding in a car carrying undocumented aliens was not in itself an “affirmative act” of aiding and abetting. See Altamirano, 427 F.3d at 592. However, Santiago did much more. He traveled with his wife and brother, in a coordinated fashion, to multiple different locations. He *838 made arrangements and paid for his wife to be smuggled into the United States, all the while aligning these arrangements with his brother’s arrangements. Further, Santiago carried false immigration documents for his brother while in the El Paso airport. Altamirano does not hold that what Santiago did — as he now admits— was not aiding and abetting.
The majority’s reliance on Aguilar Gonzalez v. Mukasey, 534 F.3d 1204 (9th Cir. 2008), is also not persuasive because that case does not support the conclusion that Santiago’s admitted actions do not constitute aiding and abetting. In Aguilar Gonzalez, the petitioner reluctantly allowed her father to use her son’s birth certificate to facilitate the smuggling of an alien infant, and then accompanied him and the infant across the United States Mexico border. See id. at 1206-07. In a split decision, we held that the petitioner’s acquiescence was not an affirmative act. Id. at 1209. Santiago’s situation is materially different from the petitioner in Aguilar Gonzalez. Santiago did not merely acquiesce and accompany; he personally arranged and paid for his wife’s illegal entry, coordinating it with his brother’s own illegal entry, through multiple locations and over the span of multiple days. Santiago’s involvement with the illegal smuggling was far greater than the reluctant petitioner in Aguilar Gonzalez. Given the facts of this case, the BIA reasonably determined that Santiago had not shown egregious circumstances because he had not presented anything to compel the conclusion that his earlier factual admissions were, in fact, untrue.
As the majority acknowledges, the IJ’s decision, after hearing evidence, to hold Santiago to his judicial admissions is reviewed for abuse of discretion. Majority at 832 (citing Matter of Saleh, No. A096 437 096, 2008 WL 5025192 (BIA Oct. 28, 2008) (per curiam)). Here, the BIA did not misinterpret or misapply the law (even accounting for Altamirano), it did not make an unwarranted finding of fact, and it did not otherwise abuse its discretion. We should not compel the BIA to accept Santiago’s withdrawal of his duly-entered admissions simply because a trier of fact might have been able to determine that his testimony might be consistent with a determination that he is innocent of the smuggling charges. Here, the facts that Santiago continues to admit reflect that he is guilty of smuggling, and the formal admissions that he entered secured him a procedural advantage. Santiago has not shown “egregious circumstances.” I would deny the petition.

. This is particularly true because Attorney Vega was fully aware of the admissions that Santiago had entered through Attorney Dominguez, and Vega did not seek to withdraw them. The majority dismisses Vega's conduct as a mere "omission” and asserts that it cannot constitute a separate "distinct and formal admission” that binds Santiago. Assuming this is true, Vega’s actions (or lack thereof) still can be considered by the BIA when determining whether Santiago showed egregious circumstances sufficient to relieve him from his previously-entered admissions.