MATTER OF B—— G——

In DEPORTATION Proceedings

A-8804968

*Decided by Board November 14, 1958*

Deportability—Assisting aliens to enter illegally—"Gain" is present where assisted aliens paid for gasoline and expenses.

Payment for gasoline and promise of additional monetary compensation constitute "gain" rendering respondent deportable under section 241(a)(13) of the 1952 act for having assisted other aliens to enter the United States illegally.

CHARGE:

Order: Act of 1952—Section 241(a)(13) (8 U.S.C. 1251(a)(13))—Knowingly and for gain assisted other aliens to enter in violation of law.

BEFORE THE BOARD

**Discussion:** The case comes forward on appeal from the order of the special inquiry officer dated October 3, 1958, directing that the respondent be deported on the charge contained in the order to show cause.

The respondent is a native and citizen of Mexico who last entered the United States at El Paso, Texas, on August 25, 1958. He was admitted for permanent residence on December 14, 1954, and he maintains a mailing address in El Paso, Texas, although he has been living with his Mexican-citizen wife and children in Juarez, Chihuahua, Mexico.

The respondent has admitted the allegations in the order to show cause that on August 25, 1958, he assisted 3 aliens to enter the United States; that he knew that they were entering the United States to proceed to Levelland, Texas, to seek employment and were not in possession of proper documents to do so. He has, however, denied the allegations in the order to show cause and the finding of fact made by the special inquiry officer that in return for his assistance to these aliens he received monetary consideration. Since it is conceded that the respondent knowingly assisted these aliens to enter the United States, the only issue presented is whether such assistance was for gain which is an element necessary to sustain the

182

charge under section 241(a)(13) of the Immigration and Nationality Act.

The respondent executed sworn statements on August 25, and August 26, 1958, before two different immigrant inspectors, the first at Ysleta, Texas, and the second at El Paso, Texas. In the first statement the respondent testified that one of the aliens, A——M——, gave him $5 for gasoline and expenses and agreed to give him an additional $20 after obtaining work. A second alien, J——L——B——, agreed to pay him whatever it would cost to go to Levelland, Texas, by bus which has been ascertained to be approximately $12. The third alien, A——M——, borrowed $10 from a woman in El Paso which he agreed to use for expenses for the trip but did not offer to pay any more. The second statement repeated the declarations concerning the money to be paid by the aliens for transporting them to Levelland, Texas.

At the hearing the respondent identified the affidavit made by him but claimed that the part about $20 additional payment was never mentioned. He did, however, admit that he was given $5 for gasoline and trip expenses. He denied he received any part of the $10 that M—— (the third alien) borrowed. He also denied that the aliens he assisted promised to pay him additional money at a later date but that he took them along because he was looking for a job and they had told him about the job.

The alien, A——M——, admitted that he gave the respondent $5 for gasoline but stated that he was not being charged an additional $20 after he found work in the United States; however, it would have been up to the aliens once they were there if they wanted to pay anything for respondent's services. There was introduced into evidence a sworn statement made by this witness, A——M——, executed on August 26, 1958, at Ysleta, Texas, before an immigration officer in which the witness stated that he made arrangements with the respondent to go to Levelland to find work and the respondent said he could borrow a car and take 3 persons along to look for work if they would help pay expenses and pay him more after finding work; that he paid the respondent $5 and told him he would pay him $20 after finding work.

The (third) alien, A——M——, testified that he was invited by one of the assisted aliens to go to Levelland and they asked him if he had money for gasoline and he told them that he would try to get some and in El Paso he borrowed $10 but that he did not give any of the $10 to the respondent, although he understood it was for the gasoline for the car which was to take them to Levelland. The (second) alien, J——L——B——, testified that they agreed to go to Levelland but there was no actual agreement to pay the respondent any amount of money, that it was understood that

they would get together between all of them to pay the expenses for the trip; that he understood that A——M——(third alien) got $10 from a cousin and A——M—— (first alien) obtained another $10 also from cousins; that he had no money and was under no obligation to pay respondent anything, but that once he had money if he wanted to he could have given him any amount 'that he felt he could and that he intended to give him an amount equivalent to a bus ticket to Levelland.

The testimony given by the respondent and the witnesses at the hearing is inconsistent with sworn statements made by them to immigration officers prior to the hearing. The special inquiry officer has taken the position that the prior statements are more credible, and upon a full consideration of all the evidence, we concur in the finding that the evidence establishes that in return for his assistance to the other aliens the respondent received some monetary consideration and was promised additional monetary consideration at a later date.

Counsel relies upon *Matter of G——M——*, A–3894495, 5 I. & N. Dec. 93, as controlling. However, the facts in that case are not comparable. We believe the facts in this case bring it within the rationale of the holding in *Matter of P——G——*, A–7802114, 7 I. & N. Dec. 514 (1957). In that case we held that an agreement to pay later constitutes "gain" or "anticipated gain" even though no money is paid at the time, and that the anticipation of profit, no matter how small, brings the respondent within the deportation provision. Many cases revolve around a promise to pay respondent enough to cover the cost of his gasoline; we have held that this constitutes an "anticipated gain." The word "gain" is construed in a practical sense to cover cases in which illegal smuggling was encouraged or assisted for venal reasons even though the advantage which accrues to the alien be an anticipated benefit (*Matter of R——D——*, 2 I. & N. Dec. 758, 766 (Attorney General, 1947)). We accordingly conclude that the charge is sustained by the evidence.

**Order:** It is ordered that the appeal be and the same is hereby dismissed.