Joao Pedro Porfirio RIBEIRO, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 75–1761.

United States Court of Appeals,
Third Circuit.

Argued Jan. 19, 1976.

Decided March 2, 1976.

Milton S. Kramer, Kramer & Kramer,
Newark, N. J., for petitioner.

B. Franklin Taylor, Jr., Washington, D.
C., James P. Morris, Chester J. Halicki,
Government Regulations Section, Crim.
Div., Dept. of Justice, Washington, D. C.,
for respondent.

Before HUNTER, BIGGS and GARTH,
Circuit Judges.

OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This case comes before us on a petition
for review of an order of the Board of
Immigration Appeals.[1] The Board, with
one member dissenting, dismissed an appeal
from a decision of the Immigration Judge
which had ordered petitioner deported un-
der Section 241(a)(13) of the Immigration
and Naturalization Act, 8 U.S.C.
§ 1251(a)(13):

> Any alien in the United States (including
> an alien crewman) shall, upon the order
> of the Attorney General, be deported
> who—
>
> prior to, or at the time of any entry, or
> at any time within five years after any
> entry, shall have, knowingly and for gain,
> encouraged, induced, assisted, abetted, or
> aided any other alien to enter or to try to
> enter the United States in violation of
> law.

Petitioner contends that the deportation
order must be vacated because

1) the government has failed to prove
that he acted "for gain";

---

1. This court's jurisdiction is based on 8 U.S.C. § 1105a.

2) the government has failed to prove that he acted "knowingly" within the meaning of the statute; and

3) the Order to Show Cause upon which he was ordered deported was defective.

In view of our conclusion that the deportation order must be set aside on the first point, we have no occasion to discuss the other issues.

The following facts are not controverted in the record. On March 23, 1974, petitioner, a resident of Union, New Jersey, received a phone call from a Mr. Aucides in Montreal.[2] Aucides stated that there were three individuals from Portugal in Montreal who wished to enter the United States but lacked transportation. Aucides asked petitioner to arrange for someone to drive from New Jersey to Montreal. The financial arrangements were as follows: petitioner was to pay the driver $100 in advance, Aucides was to give the driver $150 on leaving Montreal, and petitioner was to receive the $150 by meeting the returning auto at a point on the New York State Thruway near Albany. Petitioner carried out his part of the arrangement, but after driving to the rendezvous point and waiting for one half hour, he departed, apparently empty-handed.

After petitioner made a statement to the Immigration Service in Albany concerning these events, the Service issued an Order to Show Cause why petitioner should not be deported, and the matter came on for hearing on June 18, 1974.

At the hearing, the Government introduced petitioner's statement to the Immigration Service. Petitioner testified that the $150 he was to receive represented a reimbursement of the $100 initial outlay and an additional amount to cover the expenses of the round trip from Union to Albany. No other evidence bearing directly on the question of "gain" was offered.

In his oral decision of June 18 (p. 35–37a) the Immigration Judge recognized that the record concerning the "extra" $50[3] "raise[s] a question whether this is the gain contemplated by Section 241(a)(13) of the statute." (p. 36–37a). In answering the question in the affirmative, the Immigration Judge cited *Matter of B- G-*, 8 I & N Dec. 182 (BIA 1958), and *Matter of Vargas-Banuelos*, 13 I & N Dec. 810 (BIA 1971).[4] In dismissing the appeal, the Board of Immigration Appeals offered no additional authority or explanation, noting only that "the immigration judge properly applied the pertinent legal principles." (p. 39a). We cannot agree.

Respondent has not directed our attention to any statutory or regulatory provision defining "gain" in this context. We can only proceed on a common sense interpretation of the phrase "for gain" as requiring the prospect of an excess of tangible return over expenditure in a particular transaction. This is consistent with the view in *Matter of B- G-, supra*, that "the anticipation of *profit*, no matter how small, brings the [alien] within the deportation provision." (Emphasis added.)[5]

As the Immigration Judge recognized, the government has the burden of proving deportability by clear, convincing and unequivocal evidence. *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966). Here, the government has shown only that petitioner was to receive a modest sum of money for his part in the endeavor. While this may well be sufficient to support a finding that the alien acted "for gain" where the record contains no evidence of offsetting expenses or losses contemplated, that is not the case here. Petitioner testified that he and Aucides considered the $50 to be merely reimbursement. Petitioner also testified that he expected to incur expenses, namely the expense of a round-trip

---

2. Petitioner had brought an alien into the country at Aucides' request on a prior occasion.

3. The Government does not contend that a "gain" can be found in the $100 designated as a return of petitioner's initial cash outlay.

4. *Rev'd on other grounds sub nom. Vargas-Banuelos v. INS*, 466 F.2d 1371 (5th Cir. 1971).

5. Since we conclude that no anticipation of gain has been established, we need not decide whether a realization of gain is also required.

to Albany. This testimony was not contradicted.[6]

In this situation we believe that the "clear and convincing" test of *Woodby* requires that the government shoulder the burden of persuasion that the alien, despite his denials, did in fact act "for gain." One way in which this might be done would be a demonstration that the consideration received was so clearly in excess of the foreseeable expenses claimed that the alien's assertion that he did not anticipate gain must be disbelieved.

While it would not be appropriate for us to attempt to formulate detailed standards for assessing expenses, it would seem necessary to account in some manner for the type of travel expenses placed in issue here. On the facts of this case, we believe that the dissenting Board member properly asked

> How is it possible to say that no generally accepted accounting principles would cost the trip to Albany and back at more than $50?

p. 42a.[7]

In view of the above, the Immigration Judge's determination that the Government had established a prospective "gain" by clear, unequivocal and convincing evidence cannot be said to be based on "reasonable, substantial and probative evidence." *Woodby, supra* (standard of review).

We also agree with the dissenting member of the Board that the cases relied on by the Immigration Judge did not clearly require his determination that petitioner, on these facts, had acted for gain. *Matter of B- G-, supra* (decided before *Woodby*), was a case in which the respondent alien had

personally driven other aliens from Mexico to Texas in return for immediate payments "for gasoline and expenses" and promises of future payments. Not only is the case distinguishable on the "future payments" feature, but there is a suggestion that respondent occasionally traveled between Mexico and Texas for personal reasons; to the extent that the contemporaneous payments covered expenses of a trip which respondent would have made anyway, an "expectation" of gain could reasonably be found. *Vargas-Banuelos, supra*, did involve a payment and a "special" trip to accommodate the illegally entering aliens. However, there is no indication in the cited opinion that respondent considered the payment to be merely reimbursement of expenses or that it was of a suitable size to be so considered.[8]

Respondent suggests that where the alien is not related to and does not know the aliens assisted, the motives of love, charity and kindness can be presumptively eliminated and a profit motive *implied*. The only case cited, *Gallegos v. Hoy*, 262 F.2d 665, 666 (9th Cir. 1958), states only that

> [w]hen we have it clear enough that the bringing in was not done for either love, charity or kindness, *but for substantial financial advantage*, we hold the condition ["for gain"] has been met.

(Emphasis added). For the reasons already stated, this case is not within the quoted language. The rule as respondent would have it read is, in our view, inconsistent with the *Woodby* requirement of clear, convincing and unequivocal evidence.[9]

Since there was a failure to prove an essential element of deportability, the deportation order is contrary to law. Accord-

---

6. Respondent's brief in this court suggests the argument that petitioner's testimony that he was required to go to Albany to receive his payment was inherently incredible. There is simply no indication in the Immigration Judge's opinion that he disbelieved this testimony.

7. Petitioner's brief alleges that the round trip mileage from Union to Albany is approximately 300, that the IRS permits taxpayers using their cars for business to claim expenses in excess of $0.15 per mile, and that tolls for this journey are in excess of $5.00.

8. Of course to the extent that *Vargas-Banuelos* may be read as inconsistent with this opinion, it is hereby disapproved.

9. Such a presumption ignores a plausible possibility which petitioner asserts as explaining his actions, that the assistance to unknown aliens is rendered as a favor to a (known) third party involved in arranging the illegal entry (*i. e.*, Aucides).

ingly, the petition is granted. The order of the Board of Immigration Appeals dismissing the appeal will be reversed with the direction that the order of deportation be vacated.