Delfino SANCHEZ–MARQUEZ,
Petitioner,

v.

UNITED STATES IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 82–2424.

United States Court of Appeals,
Seventh Circuit.

Submitted Dec. 9, 1983.*

Decided Jan. 10, 1984.

Adam Bourgeois, Chicago, Ill., for petitioner.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Lauri Steven Filppu, Richard M. Evans, Dept. of Justice, Washington, D.C., for respondent.

Before WOOD, ESCHBACH and COFFEY, Circuit Judges.

PER CURIAM.

Petitioner seeks review of a decision of the Board of Immigration Appeals ("BIA" or "Board") denying petitioner's motion to reopen his deportation proceedings and to set aside his deportation order. We affirm the Board's decision.

## I.

Petitioner was admitted to the United States as a permanent resident alien on August 5, 1974. On December 2, 1976, petitioner pleaded guilty to a charge of aiding and assisting an alien to enter the United States at a place other than as designated by immigration officers, in violation of 8 U.S.C. § 1325 (1976), as provided in 18 U.S.C. § 2 (1976).[1]

The Immigration and Naturalization Service ("INS") began deportation proceedings against petitioner on June 6, 1977, charging that petitioner had, within five years of entering the United States, knowingly and for gain encouraged, induced, assisted, abetted or aided another alien to enter the United States in violation of the law.[2] At a hearing on September 12, 1977, before an Immigration Judge, the INS introduced a copy of the judgment of petitioner's 1976 conviction and also took testimony from petitioner as to the circumstances which led to his arrest and conviction. Petitioner was

represented by counsel at this hearing. The Immigration Judge found petitioner deportable in a decision dated November 9, 1977. Petitioner did not appeal this decision.

On July 31, 1978, a federal magistrate set aside petitioner's 1976 conviction and expunged the conviction from the record, pursuant to the Federal Youth Corrections Act, 18 U.S.C. § 5021(b) (1976). Petitioner then moved the BIA to reopen his deportation proceedings and set aside his deportation order. The BIA denied petitioner's motion on April 21, 1982 and petitioner filed a timely petition with this court to review the April 21 order under 8 U.S.C. § 1105a (1976), *as amended by* Act of Dec. 29, 1981, Pub.L. No. 97–116, § 18(b), 95 Stat. 1620 (1981).

## II.

■ The BIA's denial of a motion to reopen deportation proceedings is a final order of deportation and is subject to limited review in this court; we will overturn the BIA's decision only if the Board abused its discretion in denying the motion. *Diaz-Salazar v. Immigration and Naturalization Service,* 700 F.2d 1156, 1159 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). We cannot substitute our judgment for the Board's. *Kashani v. Immigration and Naturalization Service,* 547 F.2d 376, 378 (7th Cir.1977).

■ Petitioner claims that the expunction of his conviction removed the evidentiary support for the 1977 INS finding that petitioner was deportable.[3] The BIA disagreed and so do we.[4]

---

1. It is a crime for aliens to enter the United States "at any time or place other than as designated by immigration officers." 8 U.S.C. § 1325 (1976). An individual who "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States is punishable as a principal. 18 U.S.C. § 2 (1976).

2. 8 U.S.C. § 1251(a) (1976) provides in part:
   (a) Any alien in the United States (including any alien crewman) shall, upon the order of the Attorney General, be deported who—

   .    .    .    .    .

(13) prior to, or at the time of any entry, or at any time within five years after any entry, shall have, knowingly and for gain, encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law;

   .    .    .    .    .

3. Petitioner admits, however, that a conviction is not a material and necessary element to a finding of deportability pursuant to 8 U.S.C. § 1251(a)(13).

4. The INS does not argue that a conviction expunged pursuant to the provisions of the

Motions to reopen deportation proceedings are not granted by the BIA "unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 3.2 (1982). The BIA agreed that the expunction of petitioner's conviction was new evidence, but stated that it was not "material" because the finding of deportability was supported by evidence in the record independent of the conviction.

Petitioner makes three arguments in support of his contention that the Board erred in denying his motion. The first is that there is no evidence that he "knowingly" assisted seven aliens in crossing the border illegally. Petitioner testified, at the September 12, 1977 hearing, that he had gone to Mexico on vacation and met the seven aliens there by coincidence. He further testified that he told the aliens that he would drive them from the Texas border to San Antonio and then to Chicago if they met petitioner on the American side of the border. Although petitioner stated that he did not know whether the seven aliens crossed at a legal inspection point or had proper papers to enter this country, there was sufficient circumstantial evidence to establish that petitioner acted knowingly. If the aliens had the proper documentation to enter the United States legally, there was no need to meet them on the American side of the border; the aliens could have crossed the border with petitioner. The BIA could reasonably infer that petitioner knew that the seven aliens entered this country illegally. Moreover, petitioner's statement to the aliens that he would transport them if they met him on the American side of the border could certainly be construed as having "encouraged" or "induced" the aliens to cross the border illegally. We cannot say that the BIA abused its discretion in refusing to reopen the deportation proceedings because

of the alleged lack of evidence on petitioner's state of mind.

Petitioner's second argument is that there is insufficient evidence that he acted "for gain." Because acting for gain is not one of the elements of the criminal offense of which petitioner was convicted, his conviction could not be used to establish this element of deportability under § 1251(a)(13). Although the setting aside of petitioner's conviction, which is the basis of his motion to reopen, is therefore irrelevant to the immigration judge's 1977 finding that he acted for gain, we have considered petitioner's arguments concerning the "for gain" element and find them to be without merit.

Petitioner testified early in the hearing that he charged the aliens $150 apiece to take them to San Antonio. Later in the hearing, petitioner testified as follows:

Q: Did you agree on a price that you would charge them for taking them?

A: There was no set price sir, we did not talk about a price. They would pay me what they could.

Q: Why did you testify earlier that they agreed to pay you $150 apiece?

A: That amount the $150 was what they were going to pay me if they wanted to, if they could.

Q: So you did agree on a sum of $150?

A: They said they would give me the $150, but they weren't sure.

There is no evidence in the record that petitioner received any money from the seven aliens.

█ Actual receipt of money by petitioner is not necessary to establish that he acted "for gain." An agreement to pay later constitutes gain, or anticipated gain, and is sufficient to bring petitioner within the ambit of § 1251(a)(13). *Matter of P.G.*, 7 I & N Dec. 514, 516 (1957). *See also Navarrette-Navarrette v. Landon*, 223 F.2d 234 (9th Cir.1955), *cert. denied*, 351 U.S. 911, 76

---

Federal Youth Corrections Act can be used as the basis for deportation. *See Mestre Morera v. United States Immigration and Naturalization Service*, 462 F.2d 1030 (1st Cir.1972). *Compare United States v. Madison*, 689 F.2d

1300, 1314–15 (7th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 754, 74 L.Ed.2d 971 (1983) (a dismissed juvenile charge may be considered in sentencing following a subsequent criminal conviction).

S.Ct. 700, 100 L.Ed. 1444 (1956); *Matter of B.G.*, 8 I & N Dec. 182 (1958).

Petitioner asserts that the uncertainty regarding payment makes it unclear that he had a reasonable basis on which to anticipate gain. Although petitioner's testimony as to gain is ambiguous in that it was not certain that he would be paid $150 by each of the seven aliens, one can reasonably infer that there was an agreement to pay petitioner something at a later date. This is sufficient to establish that petitioner acted "for gain." *See Matter of P.G.*, 7 I & N Dec. at 517 (anticipation of compensation to be paid when the assisted aliens were able to pay establishes anticipated gain sufficient to bring respondent within the deportation provision); *Navarrette-Navarrette*, 223 F.2d at 236 (aliens told respondent they would give him fifty dollars when they got work). It is evident that petitioner's assistance to the seven aliens "was not done for either love, charity or kindness, but for tangible substantial financial advantage." *Gallegos v. Hoy*, 262 F.2d 665, 666 (9th Cir.1958).

Petitioner further argues that there is no evidence that the sum to be received would be in excess of the expenses incurred in transporting the seven aliens to Chicago, citing *Ribeiro v. Immigration and Naturalization Service*, 531 F.2d 179 (3rd Cir.1976). The *Ribeiro* court held that the statutory phrase "for gain" required "the prospect of an excess of tangible return over expenditure in a particular transaction." 531 F.2d at 180. However, the court also stated that a showing that petitioner was to receive a modest sum of money "may well be sufficient to support a finding that the alien acted 'for gain' where the record contains no evidence of offsetting expenses or losses contemplated." *Id.* In the instant case, petitioner did not introduce any evidence of offsetting expenses, unlike the *Ribeiro* petitioner. The possibility of receiving $150 apiece from seven people cannot, under these circumstances, be characterized as expenses only or a minimum payment. *See Matter of Contreras*, Interim Decision No.

2859 (BIA March 20, 1981). In addition, it appears from the record that petitioner would have returned to Chicago from his vacation regardless of whether he agreed to transport the seven aliens; if this is the case, "to the extent that the contemporaneous payments covered expenses of a trip which [petitioner] would have made anyway, an 'expectation' of gain could reasonably be found." *Ribeiro*, 531 F.2d at 181. In other words, petitioner here did not make a special trip to accommodate the seven aliens. *Compare Ribeiro.*

Petitioner's final argument is that three of the aliens were petitioner's cousins and that assisting a relative alien to enter the United States is not a deportable offense under § 1251(a)(13). *See Matter of G.M.*, 5 I & N Dec. 93 (1953). However, *Matter of G.M.* is inapposite here, as petitioner does not claim that all seven aliens were relatives of his.

For the reasons stated, we hold that the BIA did not abuse its discretion in denying petitioner's motion to reopen his deportation proceedings.