**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1828
_____

CARLOS H. PARRA-ROJAS,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA,
                                    Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No.:  A038-599-655)
Immigration Judge:  Honorable Walter A. Durling

_____

Argued on January 16, 2014


BEFORE:  RENDELL, ROTH and BARRY, <u>Circuit Judges</u>

(Opinion filed: March 26, 2014)

Thomas E. Moseley, Esquire **(Argued)**
Law Offices of Thomas E. Moseley, Esquire
One Gateway Center
Suite 2600
Newark, NJ   07102

       Counsel for Petitioner


Eric H. Holder, Jr.
Attorney General of the United States
Stuart F. Delery, Esquire
Acting Assistant Attorney General
Civil Division
Francis W. Fraser, Esquire
Senior Litigation Counsel
Dawn S. Conrad, Esquire  **(Argued)**
Trial Attorney
Office of Immigration Litigation, Civil Division
United States Department of Justice
Ben Franklin Station
P. O. Box 878
Washington, DC   20044

       Counsel for Respondent

## OPINION

**RENDELL**, <u>Circuit Judge</u>:

Petitioner Carlos Parra-Rojas was convicted of Bringing In or Harboring Aliens for Financial Gain, in violation of section 274(a)(2)(B)(ii) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2. Petitioner subsequently applied for adjustment of status under 8 U.S.C. § 1255(a). The Immigration Judge denied Petitioner's application under 8 U.S.C. § 1182(a)(6)(E)(i) (the "smuggling bar"), which renders an alien inadmissible if he has "knowingly . . . encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law". The Board of Immigration Appeals affirmed the IJ's decision. For the reasons set forth below, we will reverse.

## I. Background

Petitioner is a native and citizen of Colombia. He was admitted to the United States at age 20 as a lawful permanent resident in 1984. He is married to a U.S. citizen and has a teenage son, also a U.S. citizen.

From 1984 through 2009, Petitioner lived in the United States without incident. On November 16, 2009, he was stopped at the High Peaks checkpoint near North Hudson, New York, with two passengers in his car. Upon questioning,

3

Petitioner admitted that he was aware the two men were illegal aliens, and that he had picked them up in the Saint Regis Mohawk Reservation, on the U.S. side of the Canadian border.  He stated that he was to be paid $1,000 to drive the men from the border region to locations in Queens, New York.  He further admitted that he had performed such work on two prior occasions, and was generally paid approximately $500 per alien, plus expenses.

Petitioner was charged with Bringing In and Harboring Aliens in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and 18 U.S.C. § 2 (the "brings to" offense), which provides, in relevant part:

> (2)  Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may be taken with respect to such alien shall, for each alien in respect to whom a violation of this paragraph occurs . . . (B) in the case of . . . (ii) an offense done for the purpose of commercial advantage or private financial gain . . . be fined under Title 18

4

and shall be imprisoned . . . not less than 3 nor more than 10 years . . .

Petitioner was also charged with Transporting Illegal Aliens in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii), (a)(1)(B)(i) (the "transporting offense"), which provides, in relevant part:

> (1)(A) Any person who . . . (ii) knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law; transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law. . . shall . . . (a)(1)(B)(i) in the case . . . the offense was done for the purpose of commercial advantage or private financial gain, be fined . . . , imprisoned not more than 10 years, or both . . .

Petitioner pled guilty to the first charge. However, the second was dismissed on the motion of the Government. He was sentenced to 18 months' imprisonment.

On August 22, 2011, the Department of Homeland Security (DHS) filed a Notice to Appear with the Immigration Court, charging Petitioner with removability under INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), which states

5

that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Specifically, Petitioner was charged with committing an aggravated felony as defined by INA § 101(a)(43)(N), 8 U.S.C. § 1101(a)(43)(N), which specifically includes conduct under § 1324(a)(2). On September 13, 2011, Petitioner appeared before the Immigration Judge (IJ) and conceded the fact of his conviction and removability. However, Petitioner informed the IJ that he intended to apply for adjustment of status under 8 U.S.C. § 1255(a), which provides that such adjustment may be granted in the discretion of the Attorney General to aliens who are eligible to receive an immigrant visa and are "admissible to the United States for permanent residence".[1]

The Government conceded that an aggravated felony conviction does not, by itself, render an alien ineligible for adjustment of status based on inadmissibility. However, the Government urged that Petitioner's conviction under § 1324(a)(2)(B)(ii) rendered him inadmissible under 8 U.S.C. § 1182(a)(6)(E)(i), which provides that, "an alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or try to enter the United States in violation of law is inadmissible."

Following briefing by the parties, on February 23, 2012, the IJ issued an interlocutory order denying Petitioner's

---

[1] Petitioner contends that he was eligible for an immigrant visa by virtue of his marriage to a U.S. citizen. Petitioner is the beneficiary of an approved I-130 Petition for Alien Relative filed by his wife. (A.R. 244.)

application for adjustment of status. The IJ first recognized that "a conviction is not required for a finding of inadmissibility pursuant to [§ 1182(a)(6)(E)(i)]. However, since [Petitioner] was convicted [] , the court will address these convictions [sic] and the conduct required for the offenses." (A.R. 267.) The IJ first discussed Petitioner's "conviction" under 8 U.S.C. § 1324(a)(1)(A)(ii) for transporting an illegal alien within the United States. This was clear error, because, as noted *supra*, this charge was previously dismissed on motion of the Government; accordingly, Petitioner was never convicted of that offense.

Regarding Petitioner's actual conviction under § 1324(a)(2)(B)(ii), the IJ noted that neither the Third Circuit nor the Board of Immigration Appeals (BIA) had issued binding precedent regarding whether a conviction for a "brings to" offense renders an alien inadmissible under the § 1182 smuggling bar, and that the BIA had issued two unpublished, non-precedential decisions on the issue that appeared to contradict one another.[2] The IJ referenced

---

[2] In *Matter of Sergia Arce-Santibanez*, 2006 WL 3252534 (BIA 2006), the BIA held that an alien's conviction for a "brings to" offense rendered her inadmissible under § 1182(a)(6)(E)(i), despite the fact that the alien's conduct was limited to transporting aliens after they had already entered the United States. In that case, the BIA found that the language of the "brings to" offense "clearly falls within the definition of" § 1182(a)(6)(E)(i), and that it was "irrelevant that the respondent may not have actually aided the illegal entry of an alien; she was convicted of doing so." In *Matter of Antonio Reyes-Huereca*, 2008 WL 486877 (BIA 2008), the alien's conviction was not for a "brings to" offense, but rather

7

Petitioner's Pre-Sentence Investigation Report (PSR), which stated that Petitioner knew that he was involved in an alien smuggling organization and that he had smuggled aliens on two occasions prior to his arrest. "However," the IJ noted, "the PSR makes plain that [his] conviction is based on *transporting* aliens who were already in the United States, rather than sheparding [sic] them across the border." (A.R. 269) (emphasis in original).

The IJ reasoned that Petitioner's conduct, though limited to transporting aliens within the United States, was "integral to the overall scheme of alien smuggling." (A.R. 269-70.) Accordingly, the IJ held that Petitioner was inadmissible "due to [his] conviction." (A.R. 270, citing *Soriano v. Gonzales*, 484 F.3d 318 (5th Cir. 2007).) Because the IJ appeared to believe Petitioner had been convicted of both the transporting offense and the "brings to" offense, it is unclear whether his reference to "such conviction" referred to the (mistaken) transporting conviction, to the "brings to" conviction, or to both.[3] The IJ issued a final decision

_____

for aiding and abetting the transportation of an undocumented alien within the United States. *Id*. The BIA held that the transporting conviction, "standing alone . . . does not support a . . . charge of inadmissibility." *Id*.

[3] The IJ's citation to *Soriano*, which he originally discussed in the context of the transporting offense, suggests that he may have intended his holding to mean that Petitioner's transporting conviction rendered him inadmissible under § 1182(a)(6)(E)(i). (A.R. 270.) Again, such holding would have been in error, as Petitioner was not convicted of a transporting offense.

8

ordering Petitioner removed to Colombia on November 27, 2012. (A.R. 40.)

On appeal, the BIA affirmed the IJ's decision to pretermit Petitioner's application for adjustment of status, holding that Petitioner had not met his burden to show that he was not inadmissible under § 1182(a)(6)(E)(i). The BIA rejected Petitioner's argument that the language of § 1182(a)(6)(E)(i), which prohibits assisting, abetting, or aiding aliens "to enter or attempt to enter" the United States, is more narrow than the criminal "brings to" statute under which he was convicted. The BIA noted that it is not necessary that an individual be physically present at the border crossing to be held inadmissible under § 1182(a)(6)(E)(i). Rather, the BIA opined, it is enough that Petitioner participated in a scheme to aid illegal entry. Accordingly, the BIA concluded that "bringing or attempting to bring an alien to the United States corresponds with assisting, abetting or aiding an alien entering or trying to enter the United States." (A.R. 3.)

Petitioner also argued that his conviction for the "brings to" offense did not prove a violation of § 1182(a)(6)(E)(i) because the criminal statute requires that the individual charged have acted either "knowing[ly] or in reckless disregard of the fact that an alien has not received prior authorization" to enter the United States, while § 1182(a)(6)(E)(i) requires that the alien have acted knowingly.[4] The BIA noted that "[t]he record of conviction is inconclusive, as the Indictment charged the [Petitioner] in the disjunctive of having committed the act either knowingly

---

[4] The IJ did not address this argument in his February 23 order, though it was raised in the parties' briefing.

or with a reckless disregard."[5]   (A.R. 4.)   To determine whether Petitioner's conduct had been knowing or reckless, the BIA examined the PSR, which stated that Petitioner had admitted to knowing that the aliens he transported lacked authorization to come to the United States.  Accordingly, the BIA held that Petitioner had not established that he did not act with the requisite *mens rea*, and affirmed the IJ's finding of inadmissibility.[6]

On appeal, Petitioner raises two arguments.  First, Petitioner argues that his conviction for the "brings to" offense did not render him inadmissible under § 1182(a)(6)(E)(i).  He argues that the record of conviction alone fails to establish that he acted with the requisite *mens rea*, and that the BIA engaged in improper fact-finding by examining the PSR to determine that he acted with knowledge that the aliens lacked authorization to enter the United States.  Nor, he argues, does the statute of conviction establish that his conduct satisfied the requirements of § 1182(a)(6)(E)(i), because the language of the "brings to" offense is broader than that of the smuggling bar, which

---

[5] As Petitioner notes in his brief (Pet. Br. 18), this statement was error, as the Indictment in fact charged Petitioner conjunctively, as having acted knowingly *and* in reckless disregard.  (*See* A.R. 155.)

[6] Because the BIA held that Petitioner was inadmissible due to his conviction under § 1324(a)(1)(A)(ii), it declined to reach whether his "conviction" for the transporting offense under § 1324(a)(1)(A)(ii) also rendered him inadmissible.  (A.R. 4.)   Again, this was in error, as Petitioner was not convicted of a transporting offense.

requires assistance with the actual entry of the alien into the United States.

Second, Petitioner argues that, setting aside the statute of conviction and examining his actual conduct, he is not inadmissible under § 1182(a)(6)(E)(i) because he did not have any involvement whatsoever with the aliens' actual entry into the United States, but merely transported them within the United States after their entry was complete.

## II. Standard of Review

We review decisions of the BIA under INA § 242, 8 U.S.C. § 1252. Our review is limited to constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D). We exercise plenary review over the BIA's legal conclusions, recognizing that the BIA's interpretation of the INA is entitled to deference. *See Smriko v. Ashcroft*, 387 F.3d 279, 282 (3d Cir. 2004). The burden is on the alien seeking adjustment of status to demonstrate that he is admissible. 8 U.S.C. § 1229a(c)(4)(A)(i). We will reverse the BIA's ultimate determination of inadmissibility only if it is "manifestly contrary to law." 8 U.S.C. § 1252(b)(4)(C).

## III. Discussion

A. Relevance of the Conviction

The Government's argument, in a nutshell, is that the requirements of the § 1182(a)(6)(E)(i) smuggling bar overlap with those of the criminal "brings to" offense, and therefore, because Petitioner was convicted of a "brings to" offense, his

11

conduct must also render him inadmissible under § 1182(a)(6)(E)(i). We disagree.

As an initial matter, it is undisputed that an alien need not be charged with or convicted of any criminal offense in order to be deemed inadmissible under the smuggling bar. *See Barradas v. Holder*, 582 F.3d 754, 761 and n.4 (7th Cir. 2009). Indeed, the IJ conceded this in his February 23 order. (A.R. 267.) Accordingly, courts deciding admissibility under § 1182(a)(6)(E)(i) typically examine the underlying conduct at issue. *See, e.g., Ramos v. Holder*, 660 F.3d 200 (4th Cir. 2011); *Urzua Covarrubias v. Gonzales*, 487 F.3d 742 (9th Cir. 2007); *Soriano*, 484 F.3d 318; s*ee also Fernandez v. Holder*, 422 Fed. App'x 341, 343 (5th Cir. 2011) (under § 1182(a)(6)(E)(i), "the analysis focuses on the actual conduct rather than on a conviction for a criminal offense") (citing *Soriano*). The Government has not pointed to any legal authority for the proposition that a court should consider the fact of Petitioner's conviction, rather than his actual conduct, in determining admissibility under § 1182(a)(6)(E)(i), and we decline to read into the INA any such requirement here. Accordingly, because Petitioner's conviction for the "brings to" offense is not determinative of his admissibility under § 1182(a)(6)(E)(i), we look to Petitioner's actual conduct to determine whether he is inadmissible.[7]

---

[7] Even if Petitioner's conviction under the "brings to" statute must be considered, we disagree with the BIA that the requirements of that statute necessarily overlap with those of the smuggling bar. As originally drafted, 8 U.S.C. § 1324 barred "bringing aliens into" the United States, a phrase that certain courts interpreted as synonymous with "entering" the United States. *See, e.g.*, *United States v. Anaya*, 509 F. Supp.

B. Petitioner's Conduct

We assume, without deciding, that we may look to Petitioner's PSR, as the IJ and BIA did, to inform ourselves of the conduct underlying the BIA's finding of inadmissibility. Because the PSR provides additional facts regarding Petitioner's activities beyond those contained in the record of conviction or the proceedings below, we summarize those facts here.

A few months prior to his arrest, Petitioner was laid off from a period of long-term employment and had been unable to find work. As he discussed his situation with several other people at a Colombian bakery, he was approached by a man he came to know as "Fernando", who had overheard the

289, 299 (S.D. Fla. 1980). In response, "[d]eliberately overruling case law requiring entry to sustain a smuggling conviction, Congress replaced the words 'brings into' with the words 'brings to.'" *United States v. Gonzalez-Torres*, 309 F.3d 594, 599 (9th Cir. 2002) (citing H.R. Rep. No. 682(1), 99th Cong., 2d Sess. 65 (1986)). On the other hand, despite amending the civil smuggling statute on numerous occasions, including eliminating the "for gain" requirement, Congress has retained the words "encouraged, induced, assisted, abetted, or aided any other alien to *enter or to try to enter* the United States . . . ." (emphasis added) in the civil smuggling statute, encompassing a narrower range of conduct than the words "brings to." Because the criminal statute is broader than the civil statute, it is inappropriate to hold Petitioner's conviction under the criminal statute to be determinative of whether he is inadmissible under the civil smuggling statute without inquiring into his actual conduct.

conversation. (A.R. 164.) Fernando indicated that he knew of an employment opportunity, and he and Petitioner exchanged contact information. Fernando later contacted Petitioner and informed him that he could make money by "driving to upstate New York and picking up people." (A.R. 164.) Fernando put Petitioner in contact with another person who Petitioner came to know as "Cale." Though Petitioner never met Cale, he believed that Cale was Colombian and ran a smuggling operation from Canada. (A.R. 162.)

Petitioner's first trip for Cale took place in early October 2009. He was paid $1,300 to pick up two aliens in Hogansburg, NY. (A.R. 162-63.) The second trip occurred approximately two weeks later, again in Hogansburg, and Petitioner was paid $1,000 to pick up three aliens. (A.R. 163.) On each trip, en route to and from the pick-up locations, Petitioner was in regular contact with Cale, who gave him detailed instructions. (A.R. 164.) His third and final trip, which led to his arrest, took place on November 17, 2009. (A.R. 162-63.) Again, Petitioner picked up the two aliens in Hogansburg. (A.R. at 163.) The record indicates that they had each been in the United States for several days at the time Petitioner picked them up. (A.R. 162.)

In the context of immigration law, "to enter" is a term of art referring to an alien crossing the United States border free from official restraint. *United States v. Gonzalez-Torres*, 309 F.3d 594, 598 (9th Cir. 2002); *see also United States v. Rivera-Relle*, 333 F.3d 914, 919 (9th Cir. 2003). Accordingly, to be held inadmissible for having "encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States," § 1182(a)(6)(E)(i), an individual must have performed one of these actions with

14

respect to the actual *entry* of an alien into the United States. *See also Tapucu v. Gonzalez*, 399 F.3d 736, 740 (6th Cir. 2005) ("[T]he provision . . . requires an affirmative and illicit act of assistance in shepherding someone across the border.").

It is certainly true that, to be inadmissible under the smuggling bar, an individual need not be physically present at the border crossing. However, here, there is no evidence that Petitioner performed any act encouraging, facilitating, or otherwise relating to the aliens' *entry* into the United States. The record contains no indication that Petitioner knew or had contact with any of the aliens prior to transporting them after they had already been dropped off inside the United States. *See Urzua Covarrubias*, 487 F.3d at 747 ("[W]e now hold that alien smuggling as defined in § 1182(a)(6)(E)(i) . . . continues until the initial transporter who brings the aliens to the United States ceases to transport the aliens."). Nor is there any evidence that Petitioner provided any financial or other assistance to the aliens he transported prior to their entry into the country. As the IJ acknowledged, Petitioner's conduct was strictly limited to picking up the aliens once they had already crossed the border and transporting them from one area in the United States to another. (A.R. 269.) Accordingly, by the plain text of the statute, § 1182(a)(6)(E)(i) does not apply to Petitioner's conduct.[8]

---

[8] Indeed, in *United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2006), the Ninth Circuit found that conduct similar to that at issue here did not even constitute a "brings to" offense under § 1324(a)(2). In, *Lopez*, an alien made arrangements with another person to pick up several aliens who had already crossed the border into the United States, and to drive them to El Centro, California. Sitting *en banc*, the Ninth Circuit held

15

To be sure, there are cases finding an individual inadmissible where he did not actually cross the border with other aliens but merely met them inside the United States and transported them thereafter. However, in those cases, the alien had personal involvement with the smuggled aliens prior to their entry that constituted "assistance" or "inducement". For example, in *Ramos*, parents did not actually cross the border with their four children, but rather sent each child money to pay a smuggler to help them do so. The court held that "an affirmative act that facilitates the illegal entry, such as financial assistance, may suffice" to satisfy § 1182(a)(6)(E)(i). *Ramos*, 660 F.3d at 205; s*ee also Hernandez-Guadarama v. Ashcroft*, 394 F.3d 674, 676 (9th Cir. 2005) (alien picked up seven other aliens in Mexico and drove them to the border, and arranged to pick them up after they crossed over into the United States and transport them to Washington); *Sanchez-Marquez v. INS*, 725 F.2d 61 (7th Cir. 1983) (alien found inadmissible under the precursor to the

---

that "the offense of bringing an alien to the United States terminates . . . when the person who transports the aliens to the country terminates his act of transportation and drops off the aliens in the United States." *Id*. at 1191. The court noted that "a person who moves aliens from one location in the United States to another has not brought those aliens 'to' the United States, has not acted extraterritorially, and has not committed a 'brings to' offense." *Id*. at 1195. In holding thus, the court overruled its previous decision in *United States v. Ramirez-Martinez*, 273 F.3d 903 (9th Cir. 2001), which had held that "if the defendant is involved in any 'concerted action' to bring an illegal alien to the United States he is guilty of the 'bringing to' crime." *Id*. at 1209 (Bea, J., dissenting).

smuggling deportation provision when he met seven aliens in Mexico and promised to drive them from San Antonio to Chicago if they met him on the American side of the border); *Matter of Corral-Fragaso*, 1966 BIA LEXIS 3 (1966) (while visiting Mexico, alien made arrangements with another alien to pick him up in El Paso and take him to Chicago). In each of these cases, the individual charged with inadmissibility made arrangements with an alien *before* the latter entered the United States, and either provided assistance in facilitating the entry or induced the alien to enter the country by promising transportation upon arrival.

It appears that the only case where, as here, an individual has been found to be inadmissible under § 1182(a)(6)(E)(i) absent evidence that he had any actual involvement with the smuggled aliens prior to the their entry into the United States is *Soriano*. In *Soriano*, relied upon heavily by the Government, the accused alien made contact with three other aliens in a restaurant in El Paso, Texas, and drove them to a gas station. The court found Soriano inadmissible, stating that "[a]ny alien seeking admission to the United States who participates in a scheme to aid other aliens in illegal entry is inadmissible under the language of § 1182, regardless of whether the individual was present at the border crossing." *Soriano*, 484 F.3d at 321 (citing *Sanchez-Marquez*). However, the opinion does not indicate what precise conduct Soriano was found to have engaged in, whether he had known the aliens prior to their entry to the United States or whether he had personal involvement with their entry into the country. Here, on the other hand, the record is clear that Petitioner had no involvement with the aliens prior to their entry to the United States, did not provide any assistance, financial or otherwise, in their entry, and did

17

not commit any other "affirmative act" that encouraged, induced, assisted, abetted, or aided the aliens' entry, as required by § 1182(a)(6)(E)(i).

Moreover, the INA creates a separate crime—the transporting offense—that more appropriately encompasses Petitioner's actual conduct (although, as noted above, Petitioner was not convicted of a transporting offense). Had Congress wished to include transportation of aliens within the United States as a ban to admissibility, as it did with the smuggling bar, it presumably could have done so. However, absent any evidence of an intent to expand the reach of the otherwise plain language of § 1182(a)(6)(E)(i) to include anyone who is in any way associated with a scheme or plan relating to "entry," we think that reading the smuggling bar to include Petitioner's conduct is unwarranted.[9]

---

[9] Other courts have agreed that mere transportation of an alien within the United States, even if done knowingly, does not suffice to establish inadmissibility under § 1182(a)(6)(E)(i). *See, e.g., Rodriguez-Gutierrez v. INS*, 59 F.3d 504, 509 n.3 (5th Cir. 1995) ("Rodriguez was convicted for transporting illegal aliens rather than for aiding and abetting an entry. Therefore, he is not excludable under section 1182(a)(6)(E)."); *Matter of Antonio Reyes-Huereca*, 2008 WL 486877, at *3 (a transporting conviction, "standing alone . . . does not support a . . . charge of inadmissibility"); *Matter of Maria Guadalupe Garcia De Sanchez*, 2005 Immig. Rptr. LEXIS 11746, at *3 (BIA 2005) (a conviction for a transporting offense "does not establish that the respondent has knowingly encouraged, induced, assisted, abetted, or aided any other alien to enter or try to enter the United States in violation of law").

We therefore hold that Petitioner's conduct did not constitute encouraging, inducing, assisting, abetting, or aiding another alien to enter the United States. Because we hold that Petitioner's conduct does not satisfy the requirements of the § 1182(a)(6)(E)(i) smuggling bar, we do not address Petitioner's other argument regarding whether he acted with the requisite *mens rea*.

## IV. Conclusion

For the reasons stated above, we will grant the petition for review. The judgment of the BIA is vacated and the BIA is ordered to remand the matter to the Immigration Court for further proceedings consistent with this opinion on Petitioner's application for adjustment of status under 8 U.S.C. § 1255(a).