**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1205
_____

ROBSON C. DE MARIA, a/k/a Robson Cavalcante De Maria,
Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A214-203-531)
Immigration Judge: Leo A. Finston
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 8, 2020
Before: AMBRO, GREENAWAY, JR. and PORTER, <u>Circuit</u> <u>Judges</u>

(Opinion filed: September 17, 2020)
_____

OPINION[*]
_____

PER CURIAM

    Robson De Maria petitions for review of a decision of the Board of Immigration

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appeals (BIA). For the reasons below, we will deny the petition for review.

De Maria, a citizen of Brazil, entered the United States in 2014 as a visitor. In 2018, he was charged as removable for overstaying his admission period. Initially he proceeded pro se, and an Immigration Judge (IJ) sustained the charge of removability. De Maria applied for adjustment of status based on his marriage in 2016 to a United States citizen. He also applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

After a hearing, at which De Maria was represented by counsel, the IJ denied relief. The IJ found that De Maria was not a credible witness and concluded that he was ineligible to adjust his status because there was "reason to believe" that he was inadmissible as a drug trafficker. 8 U.S.C. § 1182(a)(2)(C). In making this determination, the IJ relied on a criminal complaint and related documents filed by authorities in Brazil and obtained by the Government. A.R. at 201-232. In the alternative, the IJ found that De Maria did not warrant adjustment as a matter of discretion. The IJ denied the asylum application as untimely and noted that De Maria presented no testimony in support of his requests for withholding of removal and CAT relief and instead relied only on the record. The IJ determined that he had not met his burden for relief and denied the applications.

De Maria then filed a counseled appeal to the BIA, contesting only the IJ's denial of his application to adjust his status. The BIA upheld the IJ's determination that there

2

was reason to believe that De Maria had participated in drug trafficking and rejected his arguments that the admission of the evidence of his drug trafficking violated his right to due process. The BIA did not address the IJ's alternative holding that De Maria was not entitled to adjustment of status as a matter of discretion.

De Maria filed a timely petition for review, and we have jurisdiction pursuant to 8 U.S.C. § 1252. De Maria spends many pages of his brief challenging the IJ's denial of his applications for asylum, withholding of removal, and relief under the CAT, but he did not challenge the IJ's denial of relief on appeal to the BIA. Thus, any such arguments are unexhausted, and we lack jurisdiction over them. See 8 U.S.C. § 1252(d)(1) (Court may review final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right"); Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012).

The only issue raised by De Maria in his brief and exhausted before the BIA was his challenge to the denial of adjustment of status on the ground that De Maria was inadmissible as a drug trafficker. De Maria challenged that determination as well as the admission of the evidence supporting that determination. Thus, we will consider those two arguments.

Criminal Complaint

In the 22-page complaint, a federal prosecutor in Brazil described the evidence

3

supporting the allegation that De Maria[1] had trafficked drugs between Brazil and Europe using drug mules. The complaint contains excerpts of Facebook messages and wiretap transcripts and refers to lengthy attachments which were not included in the record. We will briefly summarize the allegations relevant to De Maria.

In July 2013, a Brazilian woman named Leticia was caught in Amsterdam with nearly 3500 grams of cocaine hidden in her luggage. Leticia's cousin, Natalia, told police that she had accessed Leticia's Facebook account and noticed that she had been "co-opted" by De Maria and a woman named Julianna to take a trip abroad. In a Facebook message, Leticia had made plans to meet with De Maria on June 17, 2013. She later discussed the trip with Julianna who tried to reassure her that she would not get caught. During one conversation, Julianna mentions that De Maria's ex-wife had made similar trips.

The criminal complaint states that De Maria prepared the documents for Leticia's trip and refers to conversations between De Maria and Leticia in the attachments. It was noted that Leticia's passport was issued through De Maria's email - robsontatoo@hotmail.com. (De Maria testified that he worked as a tattoo artist in Brazil and the United States.) After Leticia was arrested in Amsterdam, De Maria had conversations with her cousin Natalia. Excerpts of their phone conversations are in the criminal complaint. A.R. at 217-219. After De Maria denied participating in human

_____

[1] De Maria is referred to by his first name, Robson, throughout the complaint

4

trafficking, he admitted to Natalia that he was involved in drug trafficking. He informed Natalia that Leticia "just went to deliver an order, she didn't even ingest anything, okay." He later mentions that his wife did such a trip twice.

A second incident described in the complaint involved a trip by De Maria's ex-wife, Cristiane. A.R. at 221-227. The email account used to purchase her ticket was accessed from De Maria's home.[2] Before she arrived back from the Netherlands with Ecstasy, De Maria was recorded multiple times discussing how the drugs would be handled on her return.

In his testimony before the IJ, De Maria flatly denied the accusations in the criminal complaint. He denied knowing Leticia, Natalia, or Julianna but admitted that Cristiane was his ex-girlfriend. He admitted that he had received calls from Leticia's family accusing him of introducing Leticia to a Colombian man named in the criminal complaint. He also testified that he received documents from Brazil informing him that Leticia was caught with nearly 3500 grams of cocaine. As noted above, the IJ found that De Maria was not credible.

<u>Due process claim</u>

De Maria argued that the admission of the criminal complaint was fundamentally unfair and denied him due process. We review de novo whether De Maria's rights to due

---

[2] The address listed in the criminal complaint is the same one De Maria provided on his application to adjust status.

5

process were violated. <u>Ezeagwuna v. Ashcroft</u>, 325 F.3d 396, 405 (3d Cir. 2003). Evidence is admissible in removal proceedings if it is probative and its use is fundamentally fair. <u>Id.</u> The fairness of the admission of evidence depends on whether the evidence is reliable and trustworthy. <u>Id.</u> Hearsay evidence is admissible, although its nature may affect the weight it is given. <u>Kiareldeen v. Ashcroft</u>, 273 F.3d 542, 549 (3d Cir. 2001).

Citing <u>Ezeagwuna</u>, De Maria appears to argue that the criminal complaint contains hearsay that should not have been admitted. In <u>Ezeagwuna</u>, the Government submitted a two-page letter from the Vice Consul of the Embassy in Cameroon. The letter summarily described the results of an investigation conducted into documents submitted by the alien in support of her asylum claim. The Consul concluded that the documents were fraudulent but gave no information about the investigation or the investigator. <u>Ezeagwuna</u>, 325 F.3d at 401. After the alien objected, the Government subsequently provided a two-page letter from the Department of State which used the same language as the first letter. This second letter was presented three days before the hearing. Without explanation, the IJ admitted the second letter over the alien's objections. <u>Id.</u> at 402. In concluding the admission of the second letter violated the alien's right to due process because it was not reliable and trustworthy, we noted that no information had been provided regarding how the investigation was conducted. We observed that the letter contained multiple levels of hearsay and did not identify the primary investigator. <u>Id.</u> at

6

408.

Here, however, the 22-page criminal complaint thoroughly described how the investigation was conducted. A.R. at 207-228. While some of the evidence is hearsay, we note that several pieces of evidence were based on De Maria's own statements made in Facebook messages and in conversations caught on wiretap. Moreover, as noted above, hearsay evidence is admissible. Kiareldeen, 273 F.3d at 549.

De Maria argues that the Government deprived him of the opportunity to disprove the accusations because it did not provide him with the attachments to the criminal complaint. However, De Maria, who was represented by counsel before the IJ, does not state whether he attempted to obtain the attachments or how they would assist him in disproving the allegations that he denies completely. De Maria complains that he had only three weeks to review the report but does not suggest how much time he would have needed to respond to the accusations in the criminal complaint.

The admission of the criminal complaint did not violate De Maria's right to due process as the complaint appears reliable and trustworthy. The detailed, thorough complaint was issued by a federal prosecutor in Brazil and contained excerpts of inculpatory conversations by De Maria. The BIA did not err in admitting the criminal complaint.

Reason to believe De Maria was a drug trafficker

Because De Maria was seeking adjustment of status, he had the burden to show he

7

was admissible. Parra-Rojas v. Att'y Gen., 747 F.3d 164, 168 (3d Cir. 2014). An alien is inadmissible if the Attorney General "has reason to believe" he has been a trafficker of a controlled substance. 8 U.S.C. § 1182(a)(2)(C). An alien can be inadmissible under this subsection even without a conviction for drug trafficking. See Cuevas v. Holder, 737 F.3d 972, 975 (5th Cir. 2013); Garces v. Att'y Gen., 611 F.3d 1337, 1345 (11th Cir. 2010); Lopez-Umanzor v. Gonzales, 405 F.3d 1049, 1053 (9th Cir. 2005).

We review the BIA's determination that De Maria was inadmissible for substantial evidence. See Mena-Flores v. Holder, 776 F.3d 1152, 1161 (10th Cir. 2015); Garces, 611 F.3d at 1346-47; Lopez-Molina v. Ashcroft, 368 F.3d 1206, 1211 (9th Cir. 2004). Under the substantial evidence standard, the Court defers to factual findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); Espinosa-Cortez v. Att'y Gen., 607 F.3d 101, 106-07 (3d Cir. 2010).

Here, the BIA concluded that the record contained reasonable, substantial, and probative evidence to support the finding that there was reason to believe De Maria had trafficked drugs. In so concluding, the BIA stated that the criminal complaint alleged

> that [De Maria] and a cohort had planned, financed, and facilitated, through the recruitment of "mules," international drug trafficking between Brazil and Europe. This complaint sets forth [De Maria]'s alleged participation in the scheme in exhaustive detail, and includes, inter alia, transcripts of the intercepted conversations between [De Maria] and co-conspirators via hidden recording devices and wiretapped telephones, and discussions of the contents of a forensic report, email communications, and photographs and airport security footage of [De Maria] participating in the scheme.

A.R. at 4. De Maria argues that the complaint contains contradictory statements and is

8

based on second-hand knowledge; however, he ignores his own statements in the Facebook messages and wiretaps excerpted in the criminal complaint. De Maria has not demonstrated that any reasonable adjudicator would be compelled to conclude that there was no reason to believe he was a drug trafficker.

For the above reasons, we will deny the petition for review.

9